# EXHIBIT A

## GUARANTY AGREEMENT

This GUARANTY AGREEMENT, dated as of August 18, 2006 (this "Agreement"), is made by OCTAVE ENTERTAINMENT FUND, LTD., a Cayman Islands exempted company ("Guarantor"), in favor of THE GATORADE COMPANY (the "Sponsor"), the manufacturer of Gatorade Thirst Quencher. Capitalized terms used in this Agreement without definition shall have the meanings provided in Article I.

### RECITALS

WHEREAS, pursuant to the Sponsor Agreement, the Sponsor has agreed to make the Advance to the Borrower;

WHEREAS, the obligation of the Sponsor to make the Advance to the Borrower is conditioned upon, among other things, the execution and delivery of this Agreement by the Guarantor; and

WHEREAS, pursuant to the Financing Agreement, the Guarantor has agreed to guarantee the Advance as hereinafter provided;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce the Sponsor to make the Advance to the Borrower pursuant to the Sponsor Agreement, the Guarantor agrees, for the benefit of the Sponsor, as follows:

### ARTICLE I
### DEFINITIONS

1.01 **Definitions.** The following terms (whether or not underscored) when used in this Agreement, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"Advance" means the Additional Marketing Payment under and as defined in Section 5.2 of the Sponsor Agreement.

"Agreement" is defined in the preamble.

"Borrower" means The Gracie Movie, LLC, a New Jersey limited liability company.

"Debtor Relief Laws" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of any applicable jurisdiction affecting the rights of creditors generally.

"Financing Agreement" means the Financing Agreement dated as of the date of this Agreement between the Borrower and the Guarantor.

"Event of Default" means any of the following: (a) a failure of the Guarantor to pay the Guaranteed Obligations pursuant to Section 4.02, (b) the commencement and continuation of any proceedings under Debtor Relief Laws relating to the Guarantor, or (c) any representation of the Guarantor hereunder shall be untrue in any material respect.

"Guaranteed Obligations" is defined in Section 2.01.

"Guarantor" is defined in the preamble.

"Post Petition Interest" is defined in Section 2.04(b)(ii).

"Sponsor" is defined in the preamble.

"Sponsor Agreement" means the Strategic Marketing Agreement dated as of August __, 2006, between the Borrower and the Sponsor.

"Subordinated Obligations" is defined in Section 2.04(b).

"Termination Date" means, the earlier of the date that the Advance is paid in full in cash by the Borrower and the date that the Guaranteed Obligations are paid in full in cash by the Guarantor.

**1.02 Sponsor Agreement Definitions.** Unless otherwise defined herein or the context otherwise requires, terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Sponsor Agreement.

**1.03 Agreements.** References to agreements and other documents in this Agreement shall be deemed to include all subsequent amendments, supplements and other modifications thereto.

## ARTICLE II
## GUARANTEE

**2.01 Guaranteed Obligations.** The Guarantor hereby absolutely, unconditionally and irrevocably guarantees the punctual payment of the outstanding principal balance of the Advance (including, without limitation, any extensions, modifications, substitutions, amendments, amendments and restatements, replacements or renewals of the Advance) in an aggregate amount not to exceed a principal amount of up to $2,500,000 (such obligations of the Borrower guaranteed by the Guarantor hereunder being the "Guaranteed Obligations") as provided pursuant to Section 4.02, and also agrees to pay any and all expenses (including, without limitation, all reasonable fees, charges and disbursements of counsel) incurred by the Sponsor in enforcing any rights under this Agreement. Without limiting the generality of the foregoing, the Guarantor's obligations hereunder shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by the Borrower under the Sponsor Agreement but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar proceeding under Debtor Relief Laws involving the Borrower.

**2.02 Guarantee Absolute.** The Guarantor guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Sponsor Agreement on the date provided pursuant to Section 4.02, regardless of any law now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Sponsor with respect thereto. The obligations of the Guarantor under or in respect of this Agreement are independent of the Guaranteed Obligations under or in respect of the Sponsor Agreement, and a separate action or actions may be brought and prosecuted against the Guarantor to enforce this Agreement, irrespective of whether any action is brought against the Borrower or whether the Borrower is joined in any such action or actions. This Agreement is a present and continuing, absolute and unconditional guarantee of payment as provided herein, and not of collection, by the Guarantor of the Guaranteed Obligations of the Borrower. The liability of the Guarantor under this Agreement shall be irrevocable, absolute and unconditional irrespective of, and the Guarantor hereby irrevocably waives any defenses it may now have or hereafter acquire in any way relating to, any or all of the following:

    (a)    any lack of validity or enforceability of the Sponsor Agreement;

(b)     any change in the time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations under or in respect of the Sponsor Agreement;

(c)     any taking, exchange, release, subordination or non-perfection of any collateral for all or any of the Guaranteed Obligations;

(d)     any provision of applicable law purporting to prohibit the payment or performance by the Borrower of any of the Guaranteed Obligations;

(e)     any failure of the Sponsor to disclose to the Guarantor any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects the Borrower now or hereafter known to the Sponsor (the Guarantor waiving any duty on the part of the Sponsor to disclose such information);

(f)     any defense (other than payment), set off or counterclaim that may at any time be available to the Borrower against the Sponsor; or

(g)     any other circumstance (including, without limitation, any statute of limitations) or any existence of or reliance on any representation by the Sponsor that might otherwise constitute a defense available to, or a discharge (whether equitable or legal) of, the Guarantor or any other guarantor or surety.

2.03    **Waivers and Acknowledgments.**

(a)     The Guarantor hereby unconditionally and irrevocably waives, to the extent permitted by applicable law, promptness, diligence, notice of acceptance, presentment, demand for performance, notice of nonperformance, default, acceleration, protest or dishonor and any other notice with respect to any of the Guaranteed Obligations and any requirement that the Sponsor protect, secure, perfect or insure any lien or any property subject thereto or exhaust any right or take any action against the Borrower or any other Person or any collateral security for the Guaranteed Obligations.

(b)     The Guarantor hereby unconditionally and irrevocably waives, to the extent permitted by applicable law, any right to revoke this Agreement and acknowledges that this Agreement is continuing in nature and applies to all Guaranteed Obligations, whether existing now or in the future.

(c)     The Guarantor hereby unconditionally and irrevocably waives, to the extent permitted by applicable law, any defense arising by reason of any claim or defense based upon an election of remedies by the Sponsor that in any manner impairs, reduces, releases or otherwise adversely affects the subrogation, reimbursement, exoneration, contribution or indemnification rights of the Guarantor or other rights of the Guarantor to proceed against the Borrower.

(d)     The Guarantor hereby unconditionally and irrevocably waives any duty on the part of the Sponsor to disclose to the Guarantor any matter, fact or thing relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of the Borrower now or hereafter known by the Sponsor.

(e)     The Guarantor acknowledges that the waivers set forth in Section 2.02 and this Section 2.03 are knowingly made in contemplation of obtaining the benefits to be provided by the Borrower to the Guarantor under the Financing Agreement.

2.04    **Subordination.** The Guarantor hereby unconditionally and irrevocably agrees not to exercise any rights that it may now have or hereafter acquire against the Borrower that arise from the

-3-
Guaranty Agreement

\3598339.8

existence, payment, performance or enforcement of the Guarantor's obligations under or in respect of this Agreement including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Sponsor against the Borrower, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from the Borrower directly or indirectly, in cash or other property or by setoff or in any other manner, payment or security on account of such claim, remedy or right without the prior written consent of the Sponsor, unless and until the Termination Date has occurred.

(a) The Guarantor hereby agrees that any and all debts, liabilities and other obligations owed to the Guarantor by the Borrower under the Financing Agreement (collectively, the "Subordinated Obligations"), are hereby subordinated to the prior payment in full in cash of the Advance to the extent and in the manner hereinafter set forth in this Section 2.04:

(i) Except during the continuance of an Event of Default, the Guarantor may receive payments from the Borrower on account of the Subordinated Obligations. After the occurrence and during the continuance of any Event of Default, however, unless the Sponsor otherwise agrees in writing or the Guarantor shall have paid the Guaranteed Obligations in full, the Guarantor shall not demand, accept or take any action to collect any payment on account of the Subordinated Obligations.

(ii) In any proceeding under any Debtor Relief Law relating to the Borrower, the Guarantor agrees that (A) the commencement of such proceeding shall automatically, and without further act or notice, render all Guaranteed Obligations due and payable for purposes of this Agreement, notwithstanding any stay of the Sponsor's right to accelerate the maturity of the Advance and (B) unless the Sponsor otherwise agrees in writing the Sponsor shall be entitled to receive payments from the Borrower in an aggregate amount equal to up to the lesser of (i) the maximum amount of the Guaranteed Obligations and (ii) the then outstanding amount of the Advance (regardless of whether such payment is characterized as principal, interest or expense reimbursement or of payment of another obligation due to the Sponsor from the Borrower) before the Guarantor may receive payment of any Subordinated Obligations.

(b) If any amount shall be paid to the Guarantor in violation of this Section 2.04 at any time prior to the Termination Date, such amount shall be received and held in trust for the benefit of the Sponsor, shall be segregated from other property and funds of the Guarantor and shall forthwith be paid or delivered to the Sponsor in the same form as so received (with any necessary endorsement or assignment) to be credited and applied to the Guaranteed Obligations and all other amounts payable under this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

3.01 **Existence and Power.** (a) The Guarantor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and is in good standing in all other jurisdictions where both (i) the nature of its properties or business so requires and (ii) the failure to be in good standing would give rise to a material liability of the Guarantor.

(b) The Guarantor has all necessary organizational power and authority (i) to own its properties and carry on its business as now being, or as now intended to be, conducted, and (ii) to execute, deliver and perform its obligations under this Agreement.

3.02 **Authority and No Violation.** The execution, delivery and performance by the Guarantor of this Agreement: (a) have been duly authorized by all necessary organizational action on the part of the Guarantor, (b) will not constitute a violation of any provision of applicable law in any material respect or any order of any governmental authority applicable to the Guarantor, or any of its properties or assets in any material respect, (c) will not violate any provision of the organizational documents of the Guarantor, (d) will not violate any provision of any material agreement to which the Guarantor is a party or by which the Guarantor or any of its properties or assets are bound, (e) will not be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or create any right to terminate, any such material agreement, and (f) will not result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the properties or assets of the Guarantor.

3.03 **Governmental Approval.** All authorizations, approvals, registrations or filings from or with any governmental authority required for the execution, delivery and performance by the Guarantor of this Agreement have been duly obtained or made, and are in full force and effect, and if any further authorizations, approvals, registrations or filings should hereafter become necessary, the Guarantor shall obtain or make all such authorizations, approvals, registrations or filings.

3.04 **Binding Agreements.** This Agreement constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms, subject, as to the enforcement of remedies, to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and to general principles of equity.

3.05 **No Conditions Precedent.** There are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived.

3.06 **Independent Credit Analysis.** The Guarantor has, independently and without reliance upon the Sponsor and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement and the Guarantor has established adequate means of obtaining from the Borrower on a continuing basis information pertaining to, and is now and on a continuing basis will be completely familiar with, the business, condition (financial or otherwise), operations, performance, properties and prospects of the Borrower.

## ARTICLE IV
## PAYMENT

4.01 **Demand.** The Sponsor may make demand on the Guarantor for payment of the Guaranteed Obligations by written notice to the Guarantor delivered not earlier than (a) the commencement of any proceeding under any Debtor Relief Law relating to the Borrower and (b) five (5) days following the failure of the Borrower to repay any portion of the Advance when due in accordance with the Sponsor Agreement (whether by acceleration or otherwise), which notice shall specify (a) the then outstanding principal balance of the Advance thereon and (b) the account of the Sponsor to which payment is requested.

4.02 **Payment.** The Guarantor shall pay the Guaranteed Obligations to the Sponsor in immediately available funds to the account designated by the Sponsor no later than five (5) Business Days following the date the Guarantor receives a demand for such payment from the Sponsor pursuant to Section 4.01.

## ARTICLE V
## MISCELLANEOUS PROVISIONS

5.01    **Gatorade Guaranty.** This Agreement is the Gatorade Guaranty executed pursuant to the Financing Agreement.

5.02    **No Waiver.** Prior to the Termination Date, no failure on the part of the Sponsor to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

5.03    **Continuing Guarantee; Termination.** (a) This Agreement is a continuing agreement and shall (i) remain in full force and effect until the Termination Date, (ii) be binding upon the Guarantor, its successors and assigns and (iii) inure to the benefit of and be enforceable by the Sponsor and its successors, transferees and assigns.

(b)    The obligations of the Guarantor under this Agreement shall terminate on the Termination Date.

(c)    Notwithstanding the Termination Date, this Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Advance is rescinded or must otherwise be returned by the Sponsor for any reason, including without limitation, pursuant to the Inter-Party Agreement, or in connection with a proceeding under Debtor Relief Loans affecting the Borrower all as though such payment had not been made.

5.04    **Amendments; Successors and Assigns.** (a) No amendment to or waiver of any provision of this Agreement nor consent to any departure by the Guarantor herefrom, shall in any event be effective unless the same shall be in writing and signed by the Sponsor and, with respect to any such amendment, by the Guarantor, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(b)    This Agreement shall be binding upon the Guarantor and its successors, transferees and assigns and shall inure to the benefit of the Sponsor and its respective successors, transferees and assigns; provided, however, that no Guarantor may not assign its obligations hereunder without the prior written consent of the Sponsor.

5.05    **Addresses for Notices.** All notices and other communications to the Guarantor hereunder shall be in writing and mailed or delivered to the Guarantor c/o Octagon Asset Management, LLC, 267 Fifth Avenue, Suite 301, New York, NY 10016, Attention: C. Mead Welles.

5.06    **Section Captions.** Section captions used in this Agreement are for convenience of reference only, and shall not affect the construction of this Agreement.

5.07    **Governing Law, Etc.** (a) THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

(b)    THE GUARANTOR IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED

IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT THE SPONSOR MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST THE GUARANTOR OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(c) THE GUARANTOR IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY COURT REFERRED TO IN PARAGRAPH (b) OF THIS SECTION. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(d) THE GUARANTOR IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN **SECTION 5.05**. NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

5.08 Right to Trial by Jury. THE GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). THE GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

[Signature Page Follows]

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

OCTAVE ENTERTAINMENT FUND, LTD.

By: _____
Name: C. Mead Welles
Title: Director